KAMER ZUCKER ABBOTT
Scott M. Abbott            #4500
Bryan J. Cohen            #8033
3000 West Charleston Boulevard, Suite 3
Las Vegas, Nevada 89102-1990
Tel:  (702) 259-8640
Fax: (702) 259-8646
Email: sabbott@kzalaw.com
Email: bcohen@kzalaw.com

Attorneys for Defendant
Wynn Las Vegas, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GINA DANNENBRING, an individual, | Case No. 2:12-cv-00007-JCM-VCF |
| Plaintiff, | |
| vs. | **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| WYNN LAS VEGAS, LLC, a Nevada limited liability company, | |
| Defendant. | |

Defendant Wynn Las Vegas, LLC ("Wynn" or "Defendant"), by and through its counsel of record, the law firm of Kamer Zucker Abbott, hereby replies to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  Plaintiff has failed to raise a plausible argument that there is any genuine issue of material fact which exists as to her causes of action.  As a result, summary judgment should be granted in favor of Wynn as to Plaintiff's discrimination, retaliation, intentional infliction of emotional distress, and overtime compensation claims.

This Reply is based upon the pleadings and papers on file herein, the attached Memorandum of Points and Authorities, and any argument the Court may allow.

/ / /

/ / /

/ / /

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO ANY OF PLAINTIFF'S CLAIMS, THEREBY WARRANTING THE ENTRY OF SUMMARY JUDGMENT.**

In its Motion for Summary Judgment, Wynn included a statement of undisputed material facts, pursuant to NRCP 56(c), which set forth 34 separate facts which are uncontroverted in this case.  Plaintiff refutes many of the facts on the basis that Wynn did not have a specific policy prohibiting employees from taking home confidential information.  Plaintiff, however, fails to acknowledge Wynn's numerous policies regarding employee responsibilities to safeguard confidential information.  See Defendant's Motion at Exhibits 5, 6 and 20.  Plaintiff bases the entirety of her discrimination and retaliation claims on the existence of a policy prohibiting the taking home of customer information.  Plaintiff's termination, however, was the result of her actions beyond the mere taking home of customer information.  It is undisputed that Plaintiff transferred the customer information into a personal database on her computer and then let that information fall into the hands of a third party.  Id. at Exhibits 4 and 18.[1]

Plaintiff submitted her own list of undisputed material facts, many of which are not material facts, but rather statements of opinion or questions of law.  Defendant will address the relevant individual assertions herein, and submits that to the extent such statements are either immaterial or in dispute, Defendant objects to the representation.

A.   **Plaintiff's Title VII Discrimination Claim.**

As discussed in Defendant's Motion, in order to establish a *prima facie* case of sex discrimination under Title VII, an employee must show that she: (1) is a member of a protected class; (2) was performing her job in a satisfactory manner; (3) suffered an adverse employment action; and (4) was treated differently than similarly-situated persons outside her protected class.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988).

---

[1]  Plaintiff asserts in her response to the undisputed facts that Plaintiff "password protected" the information on her computer.  However, Plaintiff admitted that her former boyfriend had knowledge of the login and password information.  See Defendant's Motion at Exhibit 4, at 81, l. 18 – 82. l. 7.

Plaintiff asserts that she was performing her job well. To the contrary, as discussed in great detail in Defendant's Motion, Plaintiff failed to safeguard confidential customer information. Plaintiff asserts that Wynn did not have a specific policy prohibiting employees from taking home customer information, and therefore had no basis to terminate her employment. Opposition at 9. Plaintiff neglects to address Wynn's specific policies regarding the safeguarding of confidential information. See Motion at Exhibit 5 ("Employee warrants, covenants and agrees that, except upon the prior express written approval of Wynn, Employees shall hold in the strictest confidence, and shall not disclose to any person, firm, corporation or other entity, and confidential information received in connection with Employee's employment, including but not limited to (a) information or other documents concerning the business, customers or suppliers of Wynn, . . ."); Exhibit 6; Exhibit 20.

Plaintiff claims that her termination was discriminatory because no other employees were terminated for taking home customer information. As noted previously, it was not the mere taking home of the information that resulted in Plaintiff's termination. Rather, it was Plaintiff's copying of the customer information into her own personal database and then allowing that database to fall into the hands of a third party that resulted in her termination. See Motion at Exhibit 18. As discussed in Defendant's Motion, other employees that failed to safeguard confidential information were discharged. See Motion at Exhibit 23.

Plaintiff insists that without a specific policy prohibiting employees from taking home customer information, the reason for her termination must be pretext for discrimination. Again, Plaintiff refuses to address the entire sequence of events, focusing rather on one single element. Plaintiff's taking home of the customer information was the catalyst for her ultimate failure to safeguard the confidential customer information. Plaintiff's admitted manual transfer of patron information into her personal computer and her subsequent failure to protect that information from a third party is what led to her termination. See Motion at Exhibit 18. It was these acts that were in direct violation of Wynn's Non Disclosure / Non Solicitation Agreement, Wynn's Code of Business Conduct and Ethics, and Wynn's Code of Personal Conduct. See Motion at Exhibits 5, 6 and 20. None of the other employees that Plaintiff alludes to having taken home customer

information were found to have copied that information into personal databases and then allowed that information to fall into the hands of a third party.

Notably, at all times during her employment, Plaintiff was an at-will employee. <u>See</u> Motion at Exhibit 4, at 68, l. 13 – 39, l. 6. Accordingly, Plaintiff's employment could be terminated at any time with or without cause. Plaintiff seems to imply that Wynn cannot establish "cause" for termination without a specific policy prohibiting the taking home of customer information, and therefore her termination could not have been for legitimate, nondiscriminatory reasons. To the contrary, the enumerated sequence of events culminating in confidential customer information ending up in the possession of an unauthorized individual was irrefutably caused by Plaintiff's own actions. Such actions were a violation of Wynn's policies requiring employees to protect confidential information. Accordingly, regardless of whether Wynn had a specific policy prohibiting the taking home of customer information, her actions subsequent to taking home the information violated company policy and justified her discharge.

As Plaintiff cannot establish a *prima facie* case of Title VII discrimination, her claim must be dismissed.

**B.     Plaintiff's State Law Claim for Pregnancy Discrimination.**

Plaintiff asserts that because Plaintiff was terminated prior to taking maternity leave, Wynn violated NRS 613.335, which requires employers to extend leave benefits to pregnant employees if such benefits are granted to employees for sickness or disability. Plaintiff's argument is flawed inasmuch as she claims that Wynn denied her the chance to take leave because of her termination, not that her leave would not have been granted had she remained an employee. Plaintiff's claim for relief is premised upon her assertion that Wynn did not have a legitimate basis to terminate her employment.

The evidence presented clearly demonstrates that Wynn employees that request leave for the birth of a child are granted such leave, including during peak business periods. <u>See</u> Motion at Exhibit 31. Accordingly, had Plaintiff remained an employee with Wynn, she would have been granted maternity leave.

1    Plaintiff would only have been entitled to leave under NRS 613.335 as a current

2    employee of Wynn.  Therefore, because Plaintiff was no longer employed by Wynn due to her

3    misconduct prior to the time she gave birth, she was not entitled to leave under NRS 613.335 and

4    cannot maintain a cause of action under that statutory section.  Accordingly, her second cause of

5    action for pregnancy discrimination must be dismissed.

6    **C.      Plaintiff's Retaliation Claim.**

7    Plaintiff asserts that because Wynn continued to oppose Plaintiff's claim for

8    unemployment benefits after the filing of her Charge with the Nevada Equal Rights Commission

9    ("NERC"), its actions were retaliatory.  The fact that Wynn participated in its lawful rights to

10   challenge Plaintiff's claim for unemployment benefits does not constitute retaliation under Title

11   VII.  See Roman v. Cornell Univ., 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999) (noting that

12   employers frequently challenge unemployment insurance benefits and that, without more,

13   reasonable legal positions, although adverse to the plaintiff, do not violate the anti-retaliation

14   provision of Title VII).  Moreover, Plaintiff's insinuation that because she ultimately received

15   her unemployment benefits, Wynn's opposition to her claim must have been based on

16   unidentified "false" accusations is both inaccurate and improper.   In particular, Nevada's

17   Employment Security Division's decision and the standards of misconduct for unemployment

18   purposes have no bearing on the present matter.  See NRS 612.533 ("Any finding of fact or law,

19   judgment, determination, conclusion or final order made by the Administrator or an Appeal

20   Tribunal, examiner, Board of Review, district court or any other person with the authority to

21   make findings of fact or law pursuant to NRS 612.450 to 612.530, inclusive, is not admissible or

22   binding in any separate or subsequent action or proceeding, between a person and that person's

23   present or previous employer brought before an arbitrator, court or judge of this State or the

24   United States, regardless of whether the prior action was between the same or related parties or

25   involved the same facts").  Accordingly, the fact that the state court ultimately decided to grant

26   Plaintiff her unemployment benefits does not change the fact that Wynn had a lawful right to

27   challenge Plaintiff's claim and believed it had a valid basis for doing so.

28

Moreover, the relevant inquiry is not whether Wynn's proffered reasons for Plaintiff's termination from employment were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.

Plaintiff further asserts that Wynn's offer of compromise is evidence of retaliatory conduct. Plaintiff's reliance on such information to prove liability is in violation of Federal Rule of Evidence 408. The reason for this rule is to promote non-judicial settlements of disputes, and to allow parties to discuss compromise without impacting their respective claims or defenses. Plaintiff's attempt to use Defendant's offer of compromise against it is highly improper and inadmissible.

Wynn maintained the same position with regard to Plaintiff's termination throughout the entire unemployment benefit proceeding, which began **prior** to the filing of Plaintiff's Charge of Discrimination with NERC. Plaintiff's reliance on <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1091 (10th Cir. 2007), is misguided on the basis of the simple fact that the company opposed Ms. Williams' unemployment claim **after** she filed her discrimination charge. Accordingly, Plaintiff cannot demonstrate that Wynn's actions were retaliatory and her claim must be dismissed.

**D.     Plaintiff's Intentional Infliction of Emotional Distress Claim.**

Plaintiff asserts that Wynn's conduct was extreme and outrageous to support her claim for emotional distress. She points to two cases, <u>Russo v. Clearwire US, LLC</u>, 2:12-CV-01831-PMP, 2013 WL 1855753 (D. Nev. Apr. 30, 2013), and <u>Shoen v. Amerco, Inc.</u>, 111 Nev. 735, 896 P.2d 469 (1995), to support her claims. Notably, the factual circumstances in both of those cases are inapposite to the facts herein.

First, in <u>Russo</u>, the plaintiff was legally blind, and the company repeatedly failed to provide accommodations as required by the Americans with Disabilities Act of 1990, as amended ("ADA"). <u>Russo</u>, 2013 WL 1855753, at *2-3. In the instant matter, Plaintiff attempts to equate that scenario with her request for an earlier shift. Notably, Plaintiff was not disabled, nor has she ever alleged a violation of the ADA. Contrary to her representations, Plaintiff's requests to transfer to day shift began just six (6) months after her employment commenced.

1    Specifically, Plaintiff first requested a transfer to day shift in late December 2008/early January

2    2009. See Motion at Exhibit 4, at 53, ll. 5-23. Notably, the reason for her request was that she

3    believed she would be more productive on day shift. Id. Plaintiff further asserts that other hosts

4    were permitted to transfer to day shift. However, Plaintiff acknowledged that the three hosts that

5    had been transferred all had more seniority than she and had been working as hosts for Wynn

6    before Plaintiff was even hired. Id. at 54, l. 14 – 55, l. 5. Plaintiff further alleges that she

7    subsequently made a request to transfer to day shift because she needed to get away from the

8    tobacco smoke. Id. at 125, ll. 7-20. When asked about why transferring to day shift would have

9    any impact on her exposure to tobacco smoke, inasmuch as smoking is permitted in the casino

10   twenty-four hours per day, Plaintiff could not articulate a reason other than the casino being "less

11   smokey in the daytime." Id. at 126, l. 24 – 127, l. 19. Yet, she acknowledged that the casino

12   was "smokey all the time, whether it was John smoking right next to me, but you're walking

13   through it all the time." Id. Plaintiff's request to transfer was not akin to a request for an

14   accommodation for a disability, and this single instance does not rise to the level of extreme and

15   outrageous conduct as discussed in Russo.

16       Similarly, the events in Shoen are unique from the facts asserted in the instant matter. In

17   Shoen, the former employee was subjected to physical threats, had his retirement compensation

18   discontinued, and was specifically told that the actions taken by the company were intended to

19   cause him financial distress. Shoen v. Amerco, Inc., 111 Nev. 735, 747, 896 P.2d 469, 477

20   (1995). Such circumstances did not occur in this case. Specifically, Plaintiff was terminated for

21   legitimate, non-discriminatory reasons, and Wynn had good cause for opposing Plaintiff's claim

22   for unemployment benefits. Both actions were within Wynn's rights and do not amount to

23   extreme and outrageous conduct. See, e.g., Martin v. Papillon Airways, Inc., 810 F. Supp. 2d

24   1160, 1167 (D. Nev. 2012) (recognizing that the termination of an employee, even in violation of

25   Nevada public policy, does not itself constitute extreme and outrageous conduct for purposes of

26   an intentional infliction of emotional distress claim); Alam v. Reno Hilton Corp., 819 F. Supp.

27   905, 911 (D. Nev. 1993) (noting that "[d]iscriminatory employment practices are wrong and

28   federal law makes such conduct unlawful and provides for relief; however, the tort of intentional

inflction of emotional distress is not intended to reach every discrimination claim").

Plaintiff's further assertion that Plaintiff suffered emotional distress and was "diagnosed" with depression misstates the facts of the case.  Although Plaintiff's physician commented on June 9, 2011 that Plaintiff had "depressive symptoms," no specific evaluation or diagnosis was conducted to determine if Plaintiff was in fact suffering from depression.  See Motion at Exhibit 33.  In fact, Dr. Rosen noted in his report that appropriate diagnosis and testing was not completed.  Id. at Exhibit 35.

Plaintiff admits that she never underwent mental health treatment and asserts that case law does not require that she undergo treatment.  To the contrary, the Nevada Supreme Court has held that a plaintiff must obtain "objectively verifiable indicia of the severity of [her] emotional distress," which generally requires some form of medical or psychiatric treatment.  Mazzeo v. Gibbons, No. 2:08-cv-01387-RLH-PAL, 2010 WL 4384207, at *4 (D. Nev. Oct. 28, 2010) (quoting Miller v. Jones, 114 Nev. 1291, 1300, 970 P.2d 571, 577 (1998)).  Notably, in Shoen, upon which Plaintiff relies, the employee received psychiatric treatment.

Finally, Plaintiff asserts that it was the "outrageous conduct" of Defendant that caused her emotional distress.  Interestingly, Plaintiff noted that the issues she experienced with her former boyfriend in October 2010, including his threats to her, resulting in her fearing for her own safety and that of her unborn child, was "the most traumatic experience of my life."  See Motion at Exhibit 4, Deposition Corrections at 5-6.

Accordingly, Plaintiff has failed to demonstrate that she suffered severe emotional distress as a result of her termination from employment and thus her claim for intentional infliction of emotional distress must be dismissed.

### E.    Plaintiff's Claim Under the Fair Labor Standards Act.

In her analysis of the types of functions generally related to the administrative exemption to the Fair Labor Standards Act ("FLSA"), Plaintiff conspicuously leaves out the term "marketing" from her list.  See Opposition at 23.

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance;

quality control; purchasing; procurement; advertising; *marketing*; research; safety and health; personnel management; human resources; employee benefits; labor relations; *public relations*, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. . . .  An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the *employer's customers*.

29 C.F.R. § 541.201 [emphasis added].  The type of work Plaintiff was performing is precisely the type of work covered under the administrative exemption.

Plaintiff relies on several cases that discuss "production" and "sales."  Such cases are inapposite to the instant matter as they do not properly reflect the type of work Plaintiff was engaged.  As discussed in Defendant's Motion, the facts clearly establish that Plaintiff was an exempt administrative employee for purposes of overtime compensation.  Plaintiff's Slot Marketing Executive Host position was a salaried position in which Plaintiff earned a gross biweekly salary of $2,500.00 ($65,000.00 annually).  As a Slot Marketing Executive Host, Plaintiff was engaged in office (non-manual) work directed related to Wynn's business operations and marketing efforts.  Specifically, Plaintiff was responsible for implementing marketing initiatives and cultivating relationships with gaming customers and mentoring Slot Hosts to help them develop their knowledge and customer relations skill.  Plaintiff was also required to use her discretion and independent judgment in her position by extending benefits and services to guests, issuing credit to gaming customers, reviewing and reactivating existing credit lines, deciding how to and when to market to customers, and determining how to maintain, approach, and develop new and existing relationships with customers.  See **Exhibits 8-11**. Plaintiff does not dispute these facts.  Furthermore, Plaintiff notes in her undisputed facts that she "compiled Wynn customer information to permit her to perform her job at a higher level by marketing and increasing her productivity at home."  See Docket 94 at 10.  Plaintiff's initiative in seeking to improve her marketing is indicative of her independent judgment in terms of marketing.  See Baum v. Astrazeneca LP, No. 09-2150, 2010 WL 1063935, at *2-*3 (3d Cir. Mar. 24, 2010) (analyzing "bona fide administrative capacity" in a state statute based on federal law and recognizing the employee's non-manual work in marketing pharmaceutical products to

physicians and the use of discretion in how to approach various physicians); <u>Allen v. Harrah's Entm't Inc.</u>, No. 2:04-cv 128, 2006 WL 3513857, at *11-*12 (N.D. Ind. Dec. 4, 2006) (recognizing the administrative nature of issuing "service recoveries" and "comps" to casino customers).

Plaintiff repeatedly asserts that her marketing techniques were subject to extensive guidelines and review.  The mere fact that Wynn had guidelines for the performance of her job does not detract from the fact that Plaintiff had to decide which customers to market to, including the planning and organizing of marketing trips and the issuance of credit.  <u>See</u> Motion at Exhibit 4, at 39, l. 33 – 40, l. 11; 36, l. 20 – 37, l. 14.  As the regulations note, the exemption is not lost merely because the decision may be subject to review.  <u>See</u> 29 C.F.R. § 541.202; <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516, 521-22 (2d Cir. 1982) ("The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to 'the book.'  [The company], of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made.").  The fact that her judgment or decisions may be subject to scrutiny does not impact her classification as an exempt employee.

Plaintiff further refutes the fact that Plaintiff had credit authority up to $25,000.00 as implying that the amount does not have a "significant financial impact" on the company.  <u>See</u> Opposition at 28.  In light of the fact that Plaintiff had thousands of customers, and by her own statement, "had the most authority on the swing shift," Opposition at 11, Plaintiff's comment is disingenuous.  Additionally, Plaintiff's reference to poor job performance resulting in financial losses is not the same as an employee issuing credit to a customer.  In most circumstances, poor work performance by employees will result in financial losses to a company.  However, an employee exercising her discretion to issue credit to a customer is distinct from poor work performance.

Plaintiff's was employed with Wynn in a bona fide administrative capacity exempt from overtime under the FLSA.  Accordingly, her FLSA claim, and any claims of similarly situated employees, cannot be maintained.

## II.   **CONCLUSION.**

It is apparent from Plaintiff's Opposition that she is relying almost entirely on the existence of a policy prohibiting employees from taking home customer information. She asserts that absent such a policy, she could not be found to have done anything wrong to justify her termination. To the contrary, Plaintiff's actions in copying Wynn's customer information by physically entering the data into her personal computer, and then allowing that information to fall into the hands of a third party directly violated her obligations to maintain the confidentiality of Wynn's customer information. She asserts that her former boyfriend's actions were beyond her control. Yet, had she not created the improper database taken from confidential Wynn information, her former boyfriend would never have come to possess it.

Plaintiff's claim that her pregnancy had any bearing on her termination is without merit. Accordingly, her claims for pregnancy discrimination under state and federal law should be dismissed. Similarly, Wynn's good faith basis and belief in its basis for termination in opposing Plaintiff's unemployment claim cannot be grounds for a claim of retaliation.

Additionally, Plaintiff cannot establish a claim for intentional infliction of emotional distress inasmuch as Wynn did not engage in conduct that was extreme or outrageous, and Plaintiff never demonstrated that she suffered emotional distress.

Finally, Plaintiff was employed as a Slot Marketing Executive Host, engaged in the marketing of Wynn's casino to its customers. Throughout the industry, casino hosts have always been classified in a bona fide administrative capacity exempt from overtime under the FLSA. As noted above, this is primarily due to the independent judgment hosts exercise in cultivating their relationships with the casino guests.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KAMER ZUCKER ABBOTT   *Attorneys at Law*
3000 West Charleston Boulevard, Suite 3 • Las Vegas, NV 89102 • (702) 259-8640

For the aforementioned reasons, Wynn respectfully requests that the Court enter summary judgment in its favor and against Plaintiff on all of her remaining causes of action for the reasons set forth herein.

DATED this 30th day of December, 2013.

Respectfully submitted,

KAMER ZUCKER ABBOTT

By:      /s/ Bryan J. Cohen
       Scott M. Abbott        #4500
       Bryan J. Cohen        #8033
       3000 West Charleston Boulevard, Suite 3
       Las Vegas, Nevada 89102-1990
       Tel:  (702) 259-8640
       Fax: (702) 259-8646
       Attorneys for Defendant
       Wynn Las Vegas, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of December, 2013, the undersigned, an employee of Kamer Zucker Abbott, served a copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** through the Electronic Case Filing system of the United States District Court, District of Nevada to:

John B. Marcin, Esq.
3960 Howard Hughes Parkway, 5th Floor
Las Vegas, Nevada 89169

By:      /s/ Bryan J. Cohen
       An employee of Kamer Zucker Abbott