# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

GINA DANNENBRING,

        Plaintiff(s),

v.

WYNN LAS VEGAS, LLC,

        Defendant(s).

2:12-CV-00007 JCM (VCF)

**ORDER**

Presently before the court is defendant Wynn Las Vegas, LLC's motion for summary judgment. (Doc. # 90). Plaintiff Gina Dannenbring filed a response (doc. # 93), and defendant filed a reply (doc. # 102).

Also before the court is plaintiff's motion for conditional certification and circulation of notice of a pending FLSA § 216(b) collective action. (Doc. # 64). Defendant filed a response in opposition (doc. # 81), to which plaintiff filed a reply (doc. # 83).

The instant case involves claims of Title VII discrimination, discrimination under Nevada state law, Title VII retaliation, intentional infliction of emotional distress, and violations of the Fair Labor Standards Act ("FLSA") by plaintiff Gina Dannenbring against her former employer, defendant Wynn Las Vegas, LLC. For the purposes of clarity, the court will address plaintiff's claims relating to her termination prior to addressing her FLSA claim.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## I.     Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**James C. Mahan**
**U.S. District Judge**

- 2 -

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**II.     Claims Regarding Plaintiff's Termination**

*A.     Background*

On or about June 23, 2008, plaintiff accepted a position in the slot marketing department at the Wynn Las Vegas resort. In her capacity as a "slot marketing executive host," plaintiff was responsible for cultivating relationships with resort guests to help produce and maintain customers for defendant.

At the beginning of her employment, plaintiff signed a nondisclosure form in which she agreed to "restrict disclosure of confidential information solely to those with a legitimate need to know and not discuss the same with other persons or entities." (Doc. # 90-1 p. 60). At that time, plaintiff also received a booklet describing defendant's code of business conduct, which specified that employees "have a duty to protect [defendant's] assets and ensure their efficient use." (Doc. # 90-1 p. 66).

In June 2010, plaintiff informed her immediate supervisor that she was pregnant and stated her intent to take twelve weeks of maternity leave followed by two weeks of vacation around the time of her due date.

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

On October 4, 2010, defendant received e-mails from an individual identifying himself as "John Smith" and subsequently "John P. Jones," indicating that he had in his possession what he believed to be an unauthorized casino marketing list compiled by a Wynn employee. The list included Wynn patron contact information along with the patrons' respective win/loss totals.

Security officers from defendant's parent company, Wynn Resorts, Limited, initiated an immediate investigation, ultimately revealing that plaintiff had compiled confidential information in a spreadsheet on her home computer. Plaintiff's former boyfriend had accessed plaintiff's computer and copied the file without plaintiff's permission. On October 11, 2010, defendant ended plaintiff's employment, citing plaintiff's failure to protect confidential information as the reason for termination.

On or about November 8, 2010, Wynn received notification that plaintiff had filed a claim for unemployment benefits with the Nevada Department of Employment, Training and Rehabilitation, Employment Security Division. Subsequently, on November 19, 2010, defendant, through its authorized representative, challenged any award of unemployment benefits on the basis that plaintiff had violated company policy regarding the disclosure of confidential information.

Approximately six months after her termination from employment, plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission. On or about August 29, 2011, plaintiff amended her charge of discrimination alleging that defendant had retaliated against her by challenging her unemployment benefits.

Plaintiff now alleges (a) that defendant violated Title VII by terminating her on the basis of sex, (b) defendant violated Nevada state law by denying her pregnancy leave, (c) defendant further violated Title VII by challenging her claim to unemployment benefits, and (d) defendant committed the tort of intentional infliction of emotional distress by terminating plaintiff's employment.

B.  *Title VII Discrimination*

42 U.S.C. § 2000e(k) states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so

James C. Mahan
U.S. District Judge

- 4 -

affected but similar in their ability or inability to work. . . ."

### 1. Prima Facie Case

Title VII claims are to be analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs, Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (internal citations and quotations omitted).

To establish a prima facie case, the plaintiff must present evidence showing: (1) she is a member of a protected class; (2) she was performing her job in a satisfactory manner; (3) she suffered an adverse employment action; and (4) that similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

Plaintiff alleges and defendant does not dispute that plaintiff is a member of a protected class.

While defendant has provided some evidence that plaintiff had been warned regarding some aspects of her job performance, plaintiff's evidence demonstrates that she had no warnings or negative reviews for eighteen months prior to her termination. Therefore plaintiff has provided sufficient evidence from which a reasonable person could conclude that she was performing her job in a satisfactory manner.

Plaintiff and defendant agree that plaintiff was terminated from her employment, which is certainly an adverse employment action.

Plaintiff has established that she informed defendant that she was pregnant, and that she was terminated just weeks before her anticipated due date. These facts give rise to a possible inference of discrimination.

Therefore plaintiff has sufficiently established a prima facie case of Title VII discrimination.

### 2. Legitimate, Nondiscriminatory Reasons

"If plaintiffs establish a prima facie case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.*

Here, defendant has provided significant evidence demonstrating that it terminated plaintiff's employment based on violations of its confidentiality policy. Defendant has demonstrated that it had an established policy of protecting information regarding its customers, and that plaintiff agreed to abide by this policy at the time she commenced her employment in 2008.

Defendant has also clearly shown that plaintiff violated this policy by failing to take measures to prevent confidential information from falling into the hands of an unwanted third party. Plaintiff does not dispute that her former boyfriend obtained the spreadsheet containing confidential information. Therefore, defendant has carried its burden to produce evidence demonstrating that it took adverse action against plaintiff for nondiscriminatory reasons.

### 3. Pretext

"A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007) (internal citations, quotations, and alterations omitted). "All the evidence as to pretext–whether direct or indirect–is to be considered cumulatively." *Id.*

Plaintiff argues that defendant's explanation regarding her termination is pretext, pointing to evidence showing that many other employees stored confidential information on their home computers and were not terminated. However, this argument misses the mark. Defendant does not claim that it terminated plaintiff's employment purely because she stored confidential information on her home computer. Instead, it points to the fact that plaintiff failed to protect the confidential

James C. Mahan
U.S. District Judge

- 6 -

1  information and allowed it to pass into the hands of an unwanted third party.

2  Plaintiff also indicates that defendant's explanation is pretext by pointing out that she
3  intended to take her maternity leave at the "busiest time of the year." (Doc. 90-1 p. 44). Despite
4  plaintiff's insinuation, plaintiff provides no evidence that the timing of her intended leave had
5  anything to do with defendant's decision to terminate her. On the contrary, defendant provides
6  records indicating that several other employees were allowed to take leave for lengthy periods at
7  similar times during the year.

8  Defendant's records specifically show that an executive host was allowed to take FMLA
9  leave between October 7, 2005, through February 16, 2006, a period that encompasses the entirety
10 of what plaintiff defines as "the busy season." In fact, not only did this employee continue working
11 for defendant after returning from leave, but she later received a promotion and continued her
12 employment with defendant for over five years.

13 Thus, plaintiff fails to produce any evidence indicating that defendant's justification for
14 terminating her employment was pretextual. The evidence on the record indicates that defendant
15 allowed employees to take maternity leave at any time of the year, and plaintiff cannot point to any
16 other case in which defendant terminated an employee for requesting parental leave. Therefore,
17 plaintiff has failed to carry her burden to raise a genuine dispute of material fact as to whether
18 defendant's proffered explanation for her termination was pretextual, and defendant's motion for
19 summary judgment will be granted as to the Title VII discrimination claim.

20     C.    *Pregnancy Discrimination Under Nevada Law*

21 Plaintiff argues that defendant violated Nev. Rev Stat. § 613.335 by failing to grant her leave
22 based on her pregnancy. This statute provides:

23 > If an employer grants leave with pay, leave without pay, or leave
> without loss of seniority to his or her employees for sickness or
24 > disability because of a medical condition, it is an unlawful
> employment practice to fail or refuse to extend the same benefits to
25 > any female employee who is pregnant.

26

27 However, as previously discussed, plaintiff's termination did not come as a result of her
28 pregnancy. Defendant's evidence demonstrates that plaintiff was terminated as a result of her failure

James C. Mahan
U.S. District Judge

- 7 -

to comply with the confidentiality policy. Plaintiff fails to provide any evidence indicating that her pregnancy was the reason for her termination, therefore the court will grant defendant's motion for summary judgment as it relates to this claim.

### D. Title VII Retaliation

Federal law holds that "it is unlawful to retaliate against an employee because she has taken action to enforce rights protected under Title VII." *Miller v. Fairchild*, 797 F.2d 727, 730 (9th Cir. 1986). "To succeed in a retaliation claim, the plaintiff must demonstrate (1) that she was engaging in protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997).

In this claim, plaintiff argues that defendant "retaliated" against her by opposing her request for unemployment benefits following her termination. This argument is nonsensical. Employers have a lawful right to challenge unemployment insurance claims by former employees in administrative and judicial proceedings. A ruling that defendant's conduct constituted retaliation would place employers into an unwinnable paradox in which they would violate Title VII merely by arguing that their prior actions did not violate Title VII. The court refuses to affirm such a confounding assertion.

Because the evidence shows that defendant did nothing more than assert its legal right to challenge plaintiff's claim for unemployment benefits, plaintiff does not sufficiently raise a prima facie claim for Title VII retaliation, and the court will grant defendant's motion for summary judgment as to this claim.

### E. Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) [plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate causation." *Posadas* v. *City of Reno,* 851 P.2d 438, 444 (Nev. 1993).

. . .

James C. Mahan
U.S. District Judge

- 8 -

Plaintiff claims that defendant engaged in extreme and outrageous conduct by terminating her employment and opposing her claim for unemployment benefits while she was pregnant. However, as previously stated, plaintiff provides no evidence indicating that the termination was motivated by her pregnancy.

It is well established that termination of an employee does not, by itself, constitute "extreme and outrageous conduct." *See, e.g.*, *Brooks v. Hilton Casinos Inc.*, 959 F.2d 757, 766 (9th Cir. 1992). Because there is no evidence that this case involves anything other than the termination of an employee on nondiscriminatory grounds, plaintiff fails to show that defendant engaged in any extreme or outrageous conduct. Accordingly, the court will grant defendant's motion for summary judgment as it relates to the claim for intentional infliction of emotional distress.

## II.     Plaintiff's FLSA Claim

*A.     Background*

Prior to her termination, plaintiff worked as an "executive slot marketing host" in defendant's slot marketing department. Defendant states that plaintiff "was responsible for implementing marketing initiatives and cultivating relationships with gaming customers, especially those with preferences for playing slot machines, extending benefits and services to guests based on their spending activity, issuing credit to gaming customers, reviewing and reactivating existing credit lines, and mentoring slot hosts to help them develop their knowledge and customer relations skills." (Doc. # 90 p. 4:14-19).

Plaintiff alleges that defendant failed to pay its slot marketing hosts overtime due to its incorrect classification of individuals in this position as exempt administrative employees. Plaintiff asserts that slot marketing hosts do not perform work directly related to defendant's management or general business operations, nor do they exercise "discretion or independent judgment." Therefore, she argues, these employees do not fall within the FLSA administrative employees exemption.

Plaintiff claims that, while she was employed as an executive slot marketing host, she was required to carry a company-issued cell phone or have business calls forwarded to a personal cell phone at all times. She further alleges that this requirement not only applied to her as an "executive

slot marketing host" but to all employees within defendant's international marketing, domestic marketing, and slot marketing departments.

She recounts, "These phones rang day and night, regardless of whether the host was scheduled to work during the shift when the phone call was received. The expectation was that the host would answer the phone call, greet the guest cheerfully, and accommodate the guest to secure additional business from the guest." (Doc. # 64 pp. 7-8). Plaintiff further claims that she was required to make a minimum of thirty-five calls per day, regardless of the timing of her shift. Plaintiff claims that she and other hosts are entitled to overtime compensation for the time they spent on-call beyond eight hours per day/forty hours per week.

  B.  *FLSA Framework*

The FLSA was created to provide a uniform national policy of guaranteeing compensation for all work or employment covered by the act. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981). The FLSA grants individual employees broad access to the courts and permits an action to recover minimum wages, overtime compensation, liquidated damages, or injunctive relief. *Id.* at 740.

However, the overtime provision of the FLSA does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the [s]ecretary)." 29 U.S.C. § 213(a)(1). The regulations clarify that an "employee in a bona fide administrative capacity" refers to an employee that is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200

James C. Mahan
U.S. District Judge

- 10 -

"Because the FLSA is to be liberally construed to apply to the furthest reaches consistent with congressional direction, FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-25 (9th Cir. 2002) (internal quotation marks and citations omitted).

Whether plaintiff's activities as an executive slot marketing host make her exempt from the overtime benefits of the FLSA is a question of law. *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (citing *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 (1986)). Plaintiff's actual job responsibilities as well as how her working time was allocated are questions of fact. See *Bothell*, 299 F.3d at 1124.

### 1. Compensation

Defendant claims and plaintiff does not dispute that plaintiff earned an annual salary of $65,000 as an executive slot marketing host. This amount exceeds the $455 per week minimum required for the administrative exemption.

### 2. Management or General Business Operations

29 C.F.R § 541.201 states:

(a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

While the category of work "related to the general business operations of the employer" is easily discernible in a manufacturing or retail businesses, it is rather ambiguous in companies focused on providing services. The question as to whether plaintiff's work related to defendant's general business operations is especially difficult in this case, considering the unique nature of the gaming-entertainment industry.

However, because plaintiff's work activities primarily involved "marketing," the court finds that her work was related to defendant's general business operations. Plaintiff's job responsibilities involved promoting certain activities at defendant's gaming resort and persuading customers to spend money on defendant's "products." Plaintiff extended lines of credit and distributed "complimentaries" in order to make slot-gaming more appealing and accessible to guests of the Wynn. In the context of a gaming resort, these activities certainly constitute "marketing." Because marketing is among the activities specifically listed in 29 C.F.R § 541.201, the court finds that plaintiff's primary duties were related to defendant's general business operations.

### 3. Discretion and Independent Judgment

Finally, the question as to whether plaintiff falls within the administrative exemption depends upon whether her primary duties included the use of discretion and independent judgment. With regard to the use of "discretion and independent judgment," the federal regulations provide specific guidance:

> (b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and

> bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.
>
> (c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

29 C.F.R. § 541.202.

Applying these regulations to the facts of this case, it is clear that plaintiff exercised discretion and independent judgment. Observing the § 541.202(b) factors, two in particular stand out as particularly relevant to this case: (1) "whether the employee has authority to commit the employer in matters that have significant financial impact" and (2) "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices."

Defendant claims, and plaintiff does not dispute, that plaintiff was given the discretion to issue credit lines of up to $25,000 per guest. Though plaintiff was given guidelines as to how she was to issue lines of credit, her decisions were not subject to direct review. Additionally, plaintiff's responsibilities included mentoring slot marketing hosts to help them develop their knowledge and customer relations skill. Moreover, in her complaint,

James C. Mahan
U.S. District Judge

- 13 -

plaintiff indicates that she "was the only manager assigned to the swing shift . . ." at certain times relevant to this action. (Doc. # 23 p. 7:10-11).

In giving her the ability to issue $25,000 credit lines at her own discretion, defendant bestowed upon plaintiff the "authority to commit [defendant] in matters that have significant financial impact." Furthermore, plaintiff's role as the sole manager placed on a shift belies her claim that she did not have "authority to implement management policies or operating practices" in her position. Thus, these two factors decisively indicate that plaintiff exercised sufficient "discretion and independent judgment" in her position to be classified as an exempt administrative employee under the FLSA.

Because the court finds that plaintiff was properly classified as an exempt administrative employee, she does not qualify for overtime benefits under the FLSA. Therefore, the court will grant defendant's motion for summary judgment as to this claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for summary judgment (doc. # 90) be, and the same hereby is, GRANTED. The clerk shall enter judgment accordingly and close the case.

IT IS FURTHER ORDERED that plaintiff's motion for conditional certification and circulation of notice of a pending FLSA § 216(b) collective action (doc. # 64) is DENIED as moot.

DATED February 7, 2014.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 14 -